DOA: 10/21/23

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America | CRIMINAL COMPLAINT |
| v. | CASE NUMBER:  23-6149MJ |
| Luis Bojorquez-Quinonez | |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

On or about the date described in Attachment A in the County of Maricopa in the District of Arizona, the defendant violated Title 18, United States Code § 371, offense described as follows:

**See Attachment A – Description of Counts**

I further state that I am an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and that this complaint is based on the following facts:

**See Attachment B, Statement of Probable Cause, Incorporated By Reference Herein.**

Continued on the attached sheet and made a part hereof:        ☒Yes        ☐ No

AUTHORIZED BY: Jacqueline Schesnol, AUSA

Anthony Gremaud, Special Agent for ATF
Name of Complainant

ANTHONY GREMAUD
Digitally signed by ANTHONY GREMAUD
Date: 2023.10.23 14:21:19 -07'0

Signature of Complainant

Sworn to telephonically before me

10/23/2023    @3:13pm                                    at     Phoenix, Arizona
Date                                                                        City and State

HONORABLE ALISON S. BACHUS
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

## ATTACHMENT A
## DESCRIPTION OF COUNT 1
### Conspiracy

On or about October 21, 2023, in the District of Arizona, Defendant LUIS BOJORQUEZ-QUINONEZ did knowingly and intentionally combine, conspire, confederate, and agree together and with persons known and unknown, to commit offenses against the United States, that is: (a) made false statements and representations in connection with the acquisition of a firearm to a Federal Firearms Licensee ("FFL"), which were intended and likely to deceive the businesses as to a fact material to the lawfulness of a sale of a firearm by the business, which was licensed under the provisions of Chapter 44 of Title 18, United States Code, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of the business in that Defendant LUIS BOJORQUEZ-QUINONEZ conspired with others to execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, stating one of the co-conspirators was the actual transferee/buyer, whereas in truth and fact, the co-conspirator was purchasing the firearms on behalf of Defendant LUIS BOJORQUEZ-QUINONEZ; and (b) export and send from the United States, and attempt to export and send from the United States, any merchandise, article, or object, contrary to any law or regulation of the United States, and to receive, conceal, buy, sell, and in any manner facilitate the transportation, concealment, and sale of such merchandise, article or object, knowing the same to be intended for exportation contrary to any law or regulation of the United States, in violation of Title 18, United States Code, Section 554(a), Title 50, United States Code, Section 4819, and Title 15, Code of Federal Regulations, Parts 736.2, 738, and 774.

### Purpose of the Conspiracy

The purpose of this conspiracy was (a) to obtain a firearm from a licensed dealer of firearms by means of knowing false statements and representations that concealed the identity of the true purchaser of the firearm from the records the dealer was required to

maintain; and (b) commit and assist in the commission of the unlawful smuggling of a firearm from the United States into the Republic of Mexico.  The firearm smuggled or intended to be smuggled in the course of this conspiracy includes:

- One FN 249 Rifle, Serial Number M249SA09260.

### The Means and Methods of the Conspiracy

The means and methods employed by Defendant LUIS BOJORQUEZ-QUINONEZ and his co-conspirators to carry out the conspiracy and effect its unlawful objects are as follows:

It was part of the conspiracy that Defendant LUIS BOJORQUEZ-QUINONEZ, an individual unlawfully in the United States (therefore he could not lawfully purchase a firearm) would supply cash to co-conspirator C.  That cash would be used to purchase a FN 249 Rifle.  This purchase was at the request of co-conspirator B, who was located in the Republic of Mexico.  Defendant LUIS BOJORQUEZ-QUINONEZ believed the rifle would ultimately be transported from the United States co-conspirator B in the Republic of Mexico.

It was a further part of the conspiracy that co-conspirator C would complete all required paperwork to indicate to the licensed dealer of firearms that co-conspirator C was the true transferee/buyer to facilitate the purchase of the firearm.

It was a further part of the conspiracy that Defendant LUIS BOJORQUEZ-QUINONEZ and his co-conspirators did not have any valid license or other authority to export the firearm from the United States into the Republic of Mexico.

### Overt Acts

In furtherance of the conspiracy, one or more of the co-conspirators committed, or caused to be committed, the overt acts described below:

On or about October 20, 2023, co-conspirator A contacted the FFL, Rocke Guns, who confirmed co-conspirator A wanted to purchase a FN 249 rifle, and he intended to pay cash for the firearm.  The plan was the firearm would be transferred from Rocke Guns to another FFL in Cave Creek Arizona, named Mr. Gunz.  The FN 249 would be transferred

at 1:00 p.m. on October 21, 2023.

In response to this planned transfer of the FN 249 to a suspected firearms trafficker, ATF Special Agents set up surveillance at both Rocke Guns and Mr. Gunz. At approximately 2:40 p.m., a gray SUV arrived at Rocke Guns. Co-conspirator A, who was the purchaser of the firearm was not in that SUV. Instead, co-conspirator C, co-conspirator D, and Defendant LUIS BOJORQUEZ-QUINONEZ were the individuals in the SUV. All three men met with the owner of Rocke Guns and viewed the FN 249 that co-conspirator A had arranged to purchase. After a short time, the owner of Rocke Guns, co-conspirator C, co-conspirator D, and Defendant LUIS BOJORQUEZ-QUINONEZ departed Rocke Guns and went to Mr. Gunz. Upon arrival at Mr. Gunz, co-conspirator C completed the Form 4473 and paid approximately $18,000 for the FN 249 rifle and ammunition. On ATF Form 4473, co-conspirator C answered the question that he was the true transferee/buyer, whereas in truth and fact, the firearm was for co-conspirator B, who was in Mexico.

The NICS background check returned a "delayed" status, so co-conspirator C could not take immediate possession of the rifle. Upon this delayed status, co-conspirator C exited the store and spoke with co-conspirator D and Defendant LUIS BOJORQUEZ-QUINONEZ. After a brief discussion, co-conspirator C reentered the store and stated he did not want to wait for the firearm and asked for a refund.

When interviewed by law enforcement officers, Defendant LUIS BOJORQUEZ-QUINONEZ admitted co-conspirator B in Mexico contacted him and provided money; co-conspirators C and D picked him up in a vehicle, and they drove to an FFL; and that he is not lawfully in the United States. Defendant LUIS BOJORQUEZ-QUINONEZ stated he believed the FN 249 would go to Mexico, because co-conspirator B in Mexico purchased the firearm and since he was in Mexico, then it was obvious the firearm would go to Mexico. Defendant LUIS BOJORQUEZ-QUINONEZ admitted that co-conspirator B in Mexico had previously asked Defendant LUIS BOJORQUEZ-QUINONEZ to get him firearms; co-conspirator B had sent cash via couriers; and Defendant LUIS BOJORQUEZ-

QUINONEZ had recruited others to purchase firearms for co-conspirator B in Mexico in the past.

At the time of the commission of these aforementioned overt acts, the aforementioned firearm qualified as a United States Commerce Control List item, and therefore was prohibited by law for export from the United States into Mexico without a valid license.  Defendant LUIS BOJORQUEZ-QUINONEZ and his co-conspirators did not have a license or any other lawful authority to export the firearm from the United States into Mexico.

All in violation of Title 18, United States Code, Section 371.

**ATTACHMENT B**

**STATEMENT OF PROBABLE CAUSE**

I, Anthony Gremaud, a Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, and have been since May 6, 2018.  I am a graduate of the Federal Law Enforcement Training Center ("FLETC") Criminal Investigator Training Program ("CITP") and a graduate of the ATF National Academy Special Agent Basic Training ("SABT") programs in Glynco, Georgia.  I am empowered by law to conduct investigations of and make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.  My training in law enforcement includes agency specific training in all aspects of conducting federal criminal investigations, including the planning, preparation, and execution of search warrants.  I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, U.S.C. § 2510(7), authorized to conduct investigations into alleged violations of federal law.

2.      The facts in this affidavit come from my personal observations, my training and experience, information obtained from other agents involved in the investigation, and information obtained from witnesses.  Based on the below facts, your Affiant submits there is probable cause that Defendant LUIS BOJORQUEZ-QUINONEZ ("BOJORQUEZ-QUINONEZ") conspired with others to Make a Material False Statement During the Purchase of a Firearm and to Export a Firearm from the United States, in violation of Title 18, United States Code (U.S.C.), Section 371.

**PROBABLE CAUSE**

3.      On October 21, 2023, at 5:52 p.m., BOJORQUEZ-QUINONEZ was arrested by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").   BOJORQUEZ-QUINONEZ conspired with others to purchase a firearm for an individual in Mexico, and

that firearm would be exported from the United States to the individual in Mexico, and in doing so, a material false statement was made on an ATF Form 4473.

4.      Your Affiant knows through training and experience that when individuals conspire to engage in illegal firearm related activity, those individuals purposely compartmentalize their roles to evade detection.  For example, in a firearm related conspiracy, one person may chose the firearm to be purchased, another individual may supply the money for the purchase, another person may drive to the purchase location, and another person may complete the ATF Form 4473 and initially take possession of the firearm.

5.      Your Affiant knows through training and experience that the firearms laws in Mexico are more stringent than those in the United States; therefore, it is desirable to purchase firearms in the United States and export them to Mexico.  Your Affiant knows through training and experience that the firearms laws in Arizona are more relaxed than in some other states, such as the neighboring state of California.  Exporting or sending a firearm from the United States to Mexico without proper licenses is smuggling goods from the United States, in violation of 18 U.S.C. § 554.

6.      Your Affiant knows through training and experience that individuals who are not citizens of the United States are prohibited from possessing firearms in the United States, and non-citizens cannot legally purchase firearms in the United States.

7.      Your Affiant knows through training and experience that a business licensed under the provisions of Chapter 44 of Title 18, United States Code, are a Federal Firearms Licensee ("FFL").  FFLs are required by the provisions of Chapter 44 of Title 18, United States Code, to keep required records.  One of those records is a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record ("Form 4473").  The Form 4473 is required to be completed by the buyer of a firearm.  One of the questions on the Form 4473 is, "Are you the actual transferee/buyer of the firearms listed on the form…."  The Form 4473 also warns the person filling out the form that if s/he is acquiring the firearm for another person, then s/he is not the actual transferee/buyer.  Answering this question "yes" when the person is purchasing the firearm

for another person is a material false statement during the purchase of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2).

8. Your Affiant knows through training and experience that before a firearm is transferred, FFLs run a background check on the transferee/buyer using the Federal Bureau of Investigation National Instant Criminal Background Check System ("NICS").

9. Your Affiant knows through training and experience that some firearms are particularly desired by members of the Mexican cartels. Those firearms include high-caliber, semi-automatic firearms. Your Affiant knows through training and experience that the FN 249 rifle is the replica of the military version. The FN 249 rifle is approximately 16 pounds, accommodates a 200-round ammunition belt, often mounted to another object, such as a vehicle, and sells for well over $10,000.

10. Your Affiant knows that co-conspirator A is suspected of trafficking firearms to Mexico. ATF is aware that co-conspirator A has no income and has purchased approximately $200,000 worth of firearms.

11. On October 21, 2023, your Affiant learned that the previous day, co-conspirator A contacted Rocke Guns, a FFL in Cave Creek, Arizona seeking to purchase a FN 249 rifle. Co-conspirator A told Rocke Guns that he wanted to pick up the firearm on October 21, 2023, at 1:00 p.m. Your Affiant contacted the owner of Rocke Guns who confirmed that co-conspirator A wanted to purchase a FN 249 rifle, and he intended to pay cash for the firearm. The plan was the firearm would be transferred from Rocke Guns to another FFL named Mr. Gunz in Cave Creek Arizona. The FN 249 would be transferred at 1:00 p.m. on October 21, 2023.

12. In response to this planned transfer of the FN 249 to a suspected firearms trafficker, ATF Special Agents set up surveillance at both Rocke Guns and Mr. Gunz. At approximately 2:40 p.m., a gray SUV arrived at Rocke Guns. Co-conspirator A was not in that SUV. Instead, three Hispanic males were in the SUV, who your Affiant later learned the three males were co-conspirator C, co-conspirator D, and BOJORQUEZ-QUINONEZ. All three men met with the owner of Rocke Guns and viewed the FN 249 that co-

conspirator A had arranged to purchase. After a short time, the owner of Rocke Guns and the three Hispanic males, including BOJORQUEZ-QUINONEZ, departed Rocke Guns and went to Mr. Gunz.

13. Upon arrival at Mr. Gunz, co-conspirator C, who your Affiant learned is a resident of Tucson, completed the Form 4473 and paid approximately $18,000 for the FN 249 rifle and ammunition. On ATF Form 4473, co-conspirator C selected he was the true transferee/buyer, whereas in truth and fact, the firearm was for co-conspirator B. The NICS background check returned a "delayed" status, so co-conspirator C could not take immediate possession of the rifle. Upon learning of this delayed status, co-conspirator C exited the store and spoke with co-conspirator D and BOJORQUEZ-QUINONEZ. After a brief discussion, co-conspirator C reentered the store and stated he did not want to wait for the firearm and asked for a refund.

14. Special Agents approached the three individuals in the parking lot. The three men were separated and interviewed.

Interview of co-conspirator C

15. Co-conspirator C originally stated he purchased the rifle for personal use. When asked how much he made per year, co-conspirator C stated he made approximately $35,000 per year working in the construction trade. He claimed he had been saving for the gun for some time. When asked about specific information of the FN 249 rifle he just purchased, co-conspirator C believed the rifle was a M246. There is no such thing as a M246 rifle. He did not know the manufacturer of the rifle or the kind of ammunition it fired.

16. Co-conspirator C stated that the owner of Rocke Guns told him co-conspirator A was the person who inquired about the firearm. Your Affiant pointed at BOJORQUEZ-QUINONEZ, and co-conspirator C did not know his name.

17. Later in conversation, co-conspirator C admitted the money for the gun was not actually his money. Co-conspirator C stated "they" put the money in the car, but co-conspirator C would not clarify who "they" were. Co-conspirator C admitted that the plan

was for the three men to purchase the FN 249 rifle and store it at his (co-conspirator C's) house, and then other people would retrieve the firearm at a later point.

Interview of co-conspirator D

18.    Co-conspirator D stated he and co-conspirator C are friends, and he (co-conspirator D) rode with co-conspirator C from Tucson to pick up the rifle.  When asked about BOJORQUEZ-QUINONEZ, co-conspirator D said BOJORQUEZ-QUINONEZ was a friend of a friend and really did not know him well.

Interview with BOJORQUEZ-QUINONEZ

19.    BOJORQUEZ-QUINONEZ stated that his friend co-conspirator B (who he only knew by a first name) asked him to accompany two other individuals to purchase a vehicle, and he did not know they were going to purchase a firearm until they arrived at the FFL. BOJORQUEZ-QUINONEZ stated co-conspirator B provided him with cash to purchase the rifle, and BOJORQUEZ-QUINOEZ agreed to the purchase of the firearm.  Based on the prior statement that he was going to purchase a vehicle, your Affiant believes that BOJORQUEZ-QUINONEZ was not being truthful with agents.    BOJORQUEZ-QUINONEZ stated co-conspirator B asked him for his address, and co-conspirator B sent him a text message when co-conspirators C and D were outside of his home to pick him up.    BOJORQUEZ-QUINONEZ did not provide the logistics explaining how co-conspirator B gave him the cash.

20.    BOJORQUEZ-QUINONEZ said he had never met co-conspirators C and D, and he did not have their phone numbers.  BOJORQUEZ-QUINONEZ stated he communicated with co-conspirator B about co-conspirator C's inability to complete the transfer of the FN 249.  Co-conspirator B asked BOJORQUEZ-QUINONEZ if they received a refund for the FN 249 would he (BOJORQUEZ-QUINONEZ) hold the money.    BOJORQUEZ-QUINONEZ told co-conspirator B that he did not want to be responsible for the money.

21.     BOJORQUEZ-QUINONEZ stated that inside their car there was a magazine, ammunition, and a backpack that co-conspirator C purchased from Mr. Gunz. BOJORQUEZ-QUINONEZ stated he believed the FN 249 would go to Mexico.  An ATF

Special Agent asked BOJORQUEZ-QUINONEZ why he believed the firearm would go to Mexico and BOJORQUEZ-QUINONEZ said it was logical to believe that because co-conspirator B purchased the firearm and since co-conspirator B was in Mexico, then it was obvious the firearm would go to Mexico.

22.    Special Agents asked BOJORQUEZ-QUINONEZ about previous firearm purchases. BOJORQUEZ-QUINONEZ stated that in the past co-conspirator B had asked him to purchase firearms, specifically rifles. BOJORQUEZ-QUINONEZ stated that on those previous occasions, co-conspirator B sent him cash via couriers. BOJORQUEZ-QUINONEZ stated he had met with the cash couriers in public locations and did not know any of the couriers.

23.    BOJORQUEZ-QUINONEZ told Special Agents that in the past he had recruited straw purchasers, known only as Nico and Benjamin, who he met through work. BOJORQUEZ-QUINONEZ stated he typically received $1,200 to purchase a rifle that cost approximately $900, and he would then split the profit with the purchaser. BOJORQUEZ-QUINONEZ stated Nico had purchased six or seven rifles, as recently as two weeks prior, and Benjamin had purchased approximately five firearms, as recently as a month earlier.

24.    BOJORQUEZ-QUINONEZ admitted to agents that he also arranged for others to purchase firearms for another (unknown) person.

25.    BOJORQUEZ-QUINONEZ stated he had a United States entry visitor visa, but the visa expired. BOJORQUEZ-QUINONEZ admitted that he knew he was in the United States illegally.

26.    Based on the facts incorporated herein, your Affiant believes that BOJORQUEZ-QUINONEZ conspired with co-conspirators B, C, and D to purchase a firearm that would be exported to co-conspirator B in Mexico. To enable the purchase of the FN 249, co-conspirator C made a material false statement on the Form 4473.

## CONCLUSION

27. For these reasons, your Affiant submits that there is probable cause to believe Defendant LUIS BOJORQUEZ-QUINONEZ committed Conspiracy to Make a Material

False Statement During the Purchase of a Firearm and to Export a Firearm from the United States, in violation of 18 U.S.C. § 371.

28.    I declare under penalty of perjury under the laws of the Unites States of America that the forgoing is true and correct.

ANTHONY GREMAUD
Digitally signed by ANTHONY GREMAUD
Date: 2023.10.23 14:21:44 -07'00

ANTHONY GREMAUD
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed telephonically this __23__ day of October, 2023.

HONORABLE ALISON S. BACHUS
United States Magistrate Judge